JACKLIN CHOU LEM (Cal. Bar No. 255293)
MAY LEE HEYE (Cal. Bar No. 209366)
HOWARD J. PARKER (Wash. Bar No. 07233)
KELSEY C. LINNETT (Cal. Bar No. 274547)
ANNA TRYON PLETCHER (Cal. Bar No. 239730)
Antitrust Division
U.S. Department of Justice
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102-3478
Tel: (415) 436-6660; Fax: (415) 436-6687
jacklin.lem@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHIEN CHUNG CHEN,<br>a/k/a ANDREW CHEN,<br><br>Defendant. | No. CR 11-0166 RS<br><br>**UNITED STATES' REPLY TO ANDREW CHEN'S SENTENCING MEMORANDUM**<br><br>Sentencing Date: **February 5, 2013**<br>Time: 2:30 p.m.<br>Place: Rm. 3, 17th Floor<br><br>Hon. Richard Seeborg<br>United States District Judge |

**I.     Introduction**

The United States respectfully submits this reply in response to the defendant Andrew Chen's sentencing memorandum.  This reply addresses two issues raised in the defendant's memo: (1) the assertion that the government's recommendation for six months' imprisonment is disproportionate compared to other convicted defendants, Def. Memo at 18-19; and (2) the assertion that he was the "primary whistleblower" in the government's investigation of the aftermarket auto lights cartel, Def. Memo at 15-17.  The defendant's discussion of these two issues is incomplete and misleading, and the government submits this reply to provide the Court with a full account of the relevant facts.

The United States submits this reply brief pursuant to Criminal Local Rule 32-5(c), which requires "[a] response . . . to the opposing party's [sentencing] memorandum [to be filed] no later than 3 days prior to the date set for sentencing."

**II.    A Non-Custodial Sentence Would Be Unfair and Disproportionate to Other Co-conspirators Who Have Served Prison Terms**

In his discussion of 18 U.S.C. § 3553(a)(6), which directs the court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," the defendant omits any discussion of the fact that Polo Hsu—Andrew Chen's closest counterpart in the conspiracy and the very first defendant to plead guilty in this matter—was sentenced to and has served a six-month prison term.

Polo Hsu was the leader of the U.S. distributor Maxzone, just as Andrew Chen was the leader of the U.S. distributor Sabry Lee.  Like Andrew Chen, Polo Hsu played an important role in the day-to-day implementation of the conspiracy by developing, reviewing, and revising detailed price lists, directing subordinates to collect competitive intelligence to monitor and police compliance with the conspiracy, and raising complaints of cheating by others.  Govt. Memo at 5-6.  Andrew Chen understood that Polo Hsu was his equal and counterpart.  Within the first few weeks of taking the helm at Sabry Lee, Chen reached out to arrange a meeting with Polo Hsu, hoping to earn Hsu's trust as the newest member of the price-fixing conspiracy.  *Id.* at 5.  Granted, Andrew Chen participated in the conspiracy for a shorter period of time, but during

1

the time that Chen did participate, he performed a role in the conspiracy that was similar, if not identical to, the role played by Polo Hsu.

The assistance that Andrew Chen provided the government was not as important or significant as the assistance of Polo Hsu. *See* Lem Decl. ISO US' Motion for Downward Departure. Any relative difference between the degree of the §5K1.1 departure for Polo Hsu and Andrew Chen is fully justified by the relative difference in the value of their assistance. Andrew Chen is just as culpable as Polo Hsu. Chen should be sentenced to a term of imprisonment, just as Polo Hsu was sentenced to a term of imprisonment. Chen's recommendation of a non-custodial sentence would create a sentencing disparity that is unfair and unwarranted.

### III.     The Defendant Was Not a "Whistleblower"

The defendant claims that, as the primary source of information for the civil complaint that Sabry Lee filed in September 2008, he was "instrumental in ending the conspiracy and ultimately bringing it to light." Def. Memo at 15. The defendant explains that, but for the misguided and unwise advice of attorney Maxwell Blecher, Sabry Lee would have come forward to seek amnesty under the Antitrust Division's Corporate Leniency Policy, and, as a result, the defendant would not have been prosecuted. The defendant argues that because Sabry Lee and Andrew Chen had the opportunity to seek non-prosecution under the Leniency Policy, but failed to do so because of poor advice, this Court should now, as a matter of sentencing, make him whole by putting him in the position he would have been in but for the poor advice.

The defendant's argument fails for a number of reasons. First, the defendant was not "the primary whistleblower in the government's investigation." Andrew Chen's decision to have Sabry Lee file a civil complaint was motivated not by an honest, civic desire to expose and stop wrong doing by others, but by a desire to obtain money damages for what it perceived as economic retaliation from its competitors. It is telling that although Andrew Chen and Sabry Lee began to part ways with Eagle Eyes and the price-fixing cartel as early as September 2005, it was not until three years later, when they became victims of the cartel's predatory pricing, that Chen and Sabry Lee chose to file the lawsuit. Had Chen and Sabry Lee been motivated by a desire to expose the cartel, they could have reported the conduct much earlier than they did. And they

2

could have reported the conduct to a law enforcement agency, rather than filing a self-interested civil suit to collect damages.  In short, there is no moral high ground for Chen to claim.

Second, any claim that Andrew Chen did the right thing by bringing the conspiracy to light is undermined by his and Sabry Lee's deceptive statements contained in the complaint.  In all of the defendant's submissions to the Court, including his 21-page memo, his written statement, and the declaration from Maxwell Blecher, there is not a single mention of paragraph 22 of the civil complaint, which contains the false denial that Andrew Chen did not agree to fix prices.  *See* Lem Decl. ISO US' Sentencing Memo, Exs. 5, 7 ¶ 22 (complaint and first amended complaint, both of which contain the following allegation in paragraph 22, "While [Sabry Lee's] representative [Andrew Chen] attended many of these [conspiracy] meetings prior to 2007, plaintiff *did not agree* to the distributors' prices fixed *[sic]* and, in fact, on many occasions, continued to charge prices lower than those agreed upon by the group") (emphasis added).  This is a glaring omission.

The false denial not only casts doubt on whether Chen's participation in the illegal cartel was a single, errant episode of bad judgment (*see* Def. Memo at 2 (referring to "isolated mistakes that led to his conviction")), but it also constituted potential impeachment material that could have jeopardized Chen's credibility as a trial witness.  The government has taken the false denial into account in determining, under U.S.S.G. §5K1.1, the value of the assistance Chen has provided.  This was baggage carried by neither Polo Hsu nor Shiu-Min Hsu, who also have or are likely to receive downward departures under §5K1.1.

Third, the unwise advice of Maxwell Blecher to not seek amnesty under the Division's leniency program, while unfortunate, is not relevant to the sentencing issues currently before the Court.  Eagle Eyes, Yu-Chu Lin, and Homy Hsu could have qualified for leniency under the program, if they had been the first to come forward.  The same holds for Depo and Shiu-Min Hsu and for Maxzone and Polo Hsu.  But who did and did not come forward first to claim leniency is irrelevant.  What is relevant to this Court at sentencing is that all the auto lights defendants—Andrew Chen, Homy Hsu, Polo Hsu, and Shiu-Min Hsu—are in the position they are in because of their conscious decision to participate in an illegal price-fixing cartel, not because they may

have received poor legal advice and missed out on an opportunity to get leniency from the government.

Finally, even if Andrew Chen's alleged "whistleblower" status is a relevant mitigating factor for sentencing, it is not such an extraordinary or unique factor that it should warrant a non-custodial sentence, particularly in light of the fact that Polo Hsu and all of Chen's co-defendants have been or will likely be sentenced to serve prison terms.

DATED: February 1, 2013                    Respectfully submitted,

  /s/   Jacklin Chou Lem
JACKLIN CHOU LEM
MAY LEE HEYE
HOWARD J. PARKER
KELSEY C. LINNETT
ANNA TRYON PLETCHER

Attorneys for the United States